UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHELLY M. SHERWOOD,

       Plaintiff,

v.                                    Case No.  8:16-cv-2762-T-27AEP

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,[1]

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits ("DIB").  As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and did not employ proper legal standards, it is recommended that the Commissioner's decision be REVERSED and REMANDED.

**I.**

**A.**     **Procedural Background**

Plaintiff filed an application for a period of disability and DIB (Tr. 210–211).  The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 134–136, 138–142).  Plaintiff then requested an administrative hearing (Tr. 143–144).  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 46–74).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 25–45).  Subsequently, Plaintiff requested

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.  No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

review from the Appeals Council, which the Appeals Council denied (Tr. 1–7). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B. Factual Background and the ALJ's Decision

Plaintiff, who was born in 1968, claimed disability beginning April 4, 2013 (Tr. 210–211). Plaintiff has one year of college education (Tr. 241). Plaintiff's past relevant work experience included work as emergency medical technician ("EMT"), a cardiac monitor technician, and a nurse's aide (Tr. 68). Plaintiff alleged disability due to fibromyalgia, cervical and lumbar spine impairments, severe back pain, spinal stenosis, irritable bowel syndrome, other digestive and neurological disorders, of chronic obstruction pulmonary disease ("COPD"), emphysema, and myoclonus (Tr. 240, 273).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2018 and had not engaged in substantial gainful activity since April 4, 2013, the alleged onset date (Tr. 30). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: myoclonus, chronic pain syndrome with left shoulder subtle partial tear, fibromyalgia, degenerative disc disease, and history of COPD (Tr. 31). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 32). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work except the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently; stand or walk 6 hours in an 8-hour work day; sit 6 hours in an 8-hour workday; frequently climb ramps and stairs, balance, stoop, kneel, crouch, or crawl; never climb ladders, ropes, or scaffolds; frequently reach in front and/or

laterally and overhead on the left; frequently feel on the left; and avoid concentrated exposure to extreme cold, heat, humidity, vibration, fumes, odors, dusts, gases, poor ventilation, hazards, and noise (Tr. 32). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely credible (Tr. 33).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could perform her past relevant work as cardiac monitor technician (Tr. 37). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 38).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the

3

ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates

4

reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## III.

Plaintiff argues that the ALJ erred by (i) finding that Plaintiff's allegations of disabling limitations were not fully credible and by (ii) failing to properly weight the medical opinion evidence on record. For the reasons that follow, the ALJ failed to apply the correct legal standards and the ALJ's decision is not supported by substantial evidence.

**A. Credibility**

In social security disability cases, credibility determinations fall within the province of the ALJ. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (*per curiam*). To establish a disability based on testimony of pain and other symptoms, the claimant must show evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms or (2) that the objectively determined medical condition can reasonably be expected to give rise to the alleged symptoms. *Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see* 20 C.F.R. §§ 404.1529, 416.929. "If the objective medical evidence does not confirm the alleged severity of a claimant's symptom, but an impairment can be reasonably expected to cause that alleged severity, an ALJ must evaluate the intensity and persistence of her alleged symptoms and their effect on her ability to work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). In doing so, an ALJ must consider all available evidence including: (1) the claimant's daily activities; (2) the 'duration, frequency, and intensity' of the claimant's symptoms; (3) '[p]recipitating and aggravating factors'; (4) the effectiveness and side effects of any medications; and (5) treatment or other measures taken by

the claimant to alleviate symptoms." *Davis v. Comm'r of Soc. Sec.*, 449 F. App'x. 828, 834 (11th Cir. 2011) (citing 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)). "The ALJ is to consider these factors in light of the other evidence in the record." *Id.* Finally, when the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225; *Foote v. Chater,* 67 F.3d 1553, 1561–62 (11th Cir. 1995) (*per curiam*).

Here, although Plaintiff established the existence of an underlying medical condition, the ALJ determined that Plaintiff's medical records did not support Plaintiff's alleged level of limitations.[2] In reaching her credibility determination, the ALJ cited to excerpts from medical notes and objective test results, however, the ALJ failed to analyze Plaintiff's allegations of pain in light of the record as a whole. *See Perez v. Comm'r of Soc. Sec.*, 625 F. App'x. 408, 420 (11th Cir. 2015) (stating "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability.").

During the Administrative Hearing Plaintiff stated that her main physical limitation was dealing with generalized disabling chronic pain (*see* Tr. 52). Plaintiff stated she suffered from chronic back pain caused by a crush vertebra in her back and nerve damage in her lower back. Additionally, she suffered from chronic pain in her legs and feet caused by fibromyalgia[3] and myoclonus, and suffered from pain in her left arm caused by a torn rotator cuff in her right shoulder (Tr. 52). As a result of her pain, Plaintiff stated, she was unable to perform simple

---

[2] The ALJ based her decision in what she determined were "relative normal physical findings" on Plaintiff's treating physicians medical notes and Plaintiff's history "of no more than conservative [medical] treatment" (Tr. 35).

[3] Fibromyalgia is defined as a disease that causes inflammation and pain in the fibrous connective tissue components of muscles, tendons, ligaments, and other with connective tissues. *See Davis v. Astrue*, 287 Fed. Appx. 748, 762 (11th Cir. 2008). If the pain and fatigue caused by the fibromyalgia is sufficiently severe, fibromyalgia can be disabling. *Id.*

daily tasks such as taking a shower, dressing herself, sitting, walking, or sleeping without pain (Tr. 60–63, 65). The ALJ discredited Plaintiff's testimony with regards to pain in her left shoulder by citing to excerpts from medical notes in which physical examination of Plaintiff's left shoulder showed no swelling or edema (Tr. 33) and it was stated that treatment with injection of Decadron, Kenalog, and Marcaine and some physical therapy provided Plaintiff's with relief from her shoulder pain (Tr. 380, 389, 819). With respect to Plaintiff's fibromyalgia, degenerative disc disease, and corresponding back pain claims, the ALJ recognized the existence of these problems (Tr. 34, citing Tr. 775, 776, 868, 869, 878), but discredited their importance by determining that Plaintiff's opioid medication had improved Plaintiff's symptoms[4] and that no current references to fibromyalgia points existed in the record (Tr. 34). Additionally, the ALJ cited to multiple physical examinations of the claimant's musculoskeletal system to support her finding that Plaintiff's range of motion has consistently been described as functional or within normal limits (Docs. 566, 571, 574, 585). At first glance, this evidence may be enough to find that the ALJ's decision was supported by substantial evidence. However, a careful review of this evidence shows that the medical records cited by the ALJ represent only a partial picture of Plaintiff's disability claim. Specifically, when evaluating the pain standard, the objective medical evidence is not the only evidence that should be considered. *Perez*, 625 F. App'x. at 420. For instance, the "hallmark" of Fibromyalgia is "a lack of objective evidence," and the condition "often lacks medical and laboratory sings, and it is generally diagnosed mostly on an individual's describe symptoms." *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x. 56, 63 (11th Cir. 2010). Therefore, when an ALJ is confronted with a claim of disabling pain, it is important that the ALJ evaluates other factors such as Plaintiff's daily

---

[4] The ALJ's finding is based on a single phrase found on a medical note from Dr. Bender stating, "The intensity of the condition is reported as mild with opioid medication and moderate without opioids." (Tr. 794).

activities; the duration, frequency, and intensity of Plaintiff's pain; the factors that aggravated it; and the effectiveness and side effects of Plaintiff's medications, among other things. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Perez*, 625 F. App'x. at 420.

In this case, Plaintiff provided medical reports that substantiated her testimony regarding the duration, frequency, and intensity of her pain. First, the record shows that Plaintiff's pain has been present for several years (Tr. 819), and that her pain level varied between 7 to 9, which is considerate moderated to severe pain (Tr. 823). Plaintiff's claims are also supported by medical notes dating back further than January 23, 2013, in which Plaintiff asserted her pain is constant and daily (Tr. 778, 779, 794, 796, 798). Additionally, Plaintiff's testimony regarding how simple activities such as walking and taking a shower precipitate her pain symptoms are supported by the opinions of Plaintiff's treating physicians Dr. Daniel Bender, M.D. ("Dr. Bender") and Dr. Edward Capone, D.O. ("Dr. Capone"). These physicians coincided in their opinions that Plaintiff was incapable to sit, stand, or walk for more than one hour in an eight-hour workday and was required to get up and move around every fifteen minutes (Tr. 808–815). Both doctors also indicated that Plaintiff's pain constantly interfered with her ability to pay attention and concentrate (Tr. 36–37). With regards to the effectiveness and side effects of any medications, the record shows that Plaintiff's pain is treated with opioid medication, as well as therapeutic epidural injections (Tr. 778, 779, 791). However, her treating physician Dr. Capone, stated that he has been unable "to completely relieve [Plaintiff's] pain with medication without unacceptable side effect." (Tr. 823). While a reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record, *Foote,* 67 F.3d at 1562 (citation omitted), here the Court finds that the ALJ limited her analysis to partial medical findings and did not base her decision in the evidence as a whole. Because the Court is unable to perform an adequate review of the ALJ's decision, it is

recommended that the ALJ's decision be remanded, so the ALJ can evaluate Plaintiff's credibility in light of the record as a whole.

### B. Medical Opinions

When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation omitted). The Social Security regulations provide guidelines for the ALJ to employ when evaluating medical opinion evidence. *See* 20 C.F.R. §§ 404.1527, 416.927. In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). For instance, the more a medical source presents evidence to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Further, the more consistent the medical opinion is with the record as a whole, the more weight that opinion will receive. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (*per curiam*) (citation omitted). Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). In fact, the ALJ may reject any opinion when the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*). However, "[i]f the ALJ fails to give at least great weight to

the opinion of a treating physician, he must provide a sufficiently detailed analysis with examples to demonstrate why that opinion is discounted, and provide a rationale that will enable a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Berrios v. Colvin*, No. 14-23860-CIV, 2016 WL 5661634, at *10 (S.D. Fla. Sept. 30, 2016).

Here, Plaintiff challenged the decision of the ALJ to give "little weight" to the opinion of Plaintiff's treating physicians Dr. Bender and Dr. Capone (Doc. 15, pp. 3–9). Both physicians coincided in their assessments of Plaintiff's working limitations as a result of her alleged physical impairments (Tr. 810–814; 823–824). As discussed above, both doctors opined that Plaintiff was capable to sit, stand, or walk less than one hour in an eight-hour workday and was required to get up and move around every fifteen minutes (Tr. 810, 823). Additionally, both doctors indicated that Plaintiff had limitations in lifting objects. Dr. Bender limited Plaintiff to occasionally lift up to twenty pounds and frequently lift up to ten pounds, (Tr. 811), while Dr. Capone stated that Plaintiff should never lift or carry objects of any weight (Tr. 823). Both doctors found that Plaintiff's impairments interfered with her ability to keep her neck in a constant position, Plaintiff had marked limitations with regard to grasping, turning, and twisting objects with both hands, Plaintiff pain constantly interfered with her ability to pay attention and concentrate, and that Plaintiff would miss work more than three times a month due to her impairments (Tr. 36–37). Despite their rather unambiguous assessment of Plaintiff's condition, the ALJ provided Dr. Bender's opinion little weight. Specifically, the ALJ considered that Dr. Bender's opinion was not "an accurate reflection of the [Plaintiff's working] abilities" because the last time Dr. Bender saw the Plaintiff was on November 20, 2013, almost a year and a half before the issuance of the ALJ's decision. *See (*Tr. 36). Similarly, the ALJ gave little weight to the opinion of Dr. Capone under the consideration that there was a gap of

treatment between November 8, 2013 and October 3, 2014. The ALJ, therefore, found that the gap in treatment was a good reason to discount the opinion of Plaintiff's treating physicians. Finally, the ALJ gave little weight to the opinion of both physicians finding that they were not consistent with the record as a whole (Tr. 37). In other words, the ALJ found good cause to reject the opinion of Plaintiff's treating physicians.

### a. Gap in Treatment

The record in this case shows that Dr. Bender, a specialist in pain management and physical medicine and rehabilitation, treated Plaintiff between August 9, 2012 and September 5, 2013, when Plaintiff suspended treatment for eleven months. During the treatment period, Plaintiff saw Dr. Bender in fifteen occasions (Tr. 636, 650, 653, 656, 659, 660, 663, 666, 669, 672, 675, 677, 679, 718, 719). Similarly, Dr. Capone treated the Plaintiff from September 9, 2011, to September 3, 2014, and treated Plaintiff as needed (Tr. 566-631, 823). The ALJ found that these gaps prevented Dr. Bender and Dr. Capone from providing an accurate assessment of Plaintiff limitations. However, the ALJ failed to discredit Plaintiff's assertion that her financial situation prevented her from purchasing insurance or allowed her to pay for private consultations. *See Dawkins v. Bowen*, 848 F.2d 1211, 1213-1214 (11th Cir. 1988) (discussing poverty as an excuse for noncompliance with prescribed medical treatment). Plaintiff explained that free clinics would not take her because her main complaint was chronic pain (Tr. 52). Additionally, the record does not show that Plaintiff's condition had changed to the point that the treating physician's medical opinions are no longer applicable to her case. Plaintiff's most recent medical records show that she still uses in narcotics and opioid medication to control her pain (Tr. 836). In her testimony, Plaintiff described her inability to take care of herself due to pain (Tr. 60-61). The gap in treatment is therefore not an adequate reason to give little weight to the opinion of treating physicians in this case.

### b. Medical Opinions Consistency with the Record as a Whole

To support his decision to provide little weight to the opinion of Plaintiff's treating physicians, the ALJ cited examples of normal findings in Plaintiff's physical examinations. For example, the ALJ cited to Dr. Capone's office notes and stated that "physical examination of plaintiff's musculoskeletal system [had] consistently reveled normal findings" (Tr. 37) (citing Tr. 566, 571, 574, 585). In the ALJ's view these normal findings contradicted Plaintiff's treating physicians' opinions. However, a closer reading of Dr. Capone's notes showed that while in some medical visits the examination of Plaintiff's musculoskeletal system "reveal[ed] no somatic dysfunction," others examinations "revel[ed] decreased range of motion in flexion-extension or rotation" and "pain on motion testing." (Tr. 566, 569, 571, 574, 585). Therefore, the ALJ's findings are a partial representation of Plaintiff's physical condition and not a "good cause" to reject the treating physician opinion. *See Phillips*, 357 F.3d at 1240-41. A complete reading of Dr. Capone's records showed that Plaintiff visited Dr. Capone at least fourteen times beginning in 2011 (Tr. 566–631). In general, Plaintiff visited Dr. Capone complaining of generalized pain caused by fibromyalgia, myoclonial jerks, and tendonitis. Dr. Capone treated Plaintiff with opioid medications and referred Plaintiff to Dr. Bender for pain management and physical evaluation (Tr. 572). At least on one occasion, Dr. Capone recommended that Plaintiff go on short term disability from work due to her pain (Tr. 572). Since March 2, 2012, Dr. Capone began recording Plaintiff pain assessment level, which ranged permanently between 7–10 (Tr. 593, 591, 595, 587, 583, 606). This evidence together with the length and frequency of treatment support Dr. Capone's assessment of plaintiff's pain limitations. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

Similarly, to discredit the opinion of Dr. Bender, the ALJ cited to Dr. Bender's office notes. Specifically, the ALJ cited to a physical examination performed on April 22, 2013, as an example of normal findings. However, Dr. Bender's notes included findings of diffuse global muscle tenderness to palpitation, muscle spasms, and tenderness (Tr. 670). Dr. Bender also noted that Plaintiff suffered from chronic low back pain, neuropathic pain, gait abnormality, thoracic degenerative joint disease, Left C8 cervical radiculopathy, among other things, and recommended that Plaintiff continue her prescribed opioid medication (Tr. 670). These findings as stated by Plaintiff, can be hardly defined as normal findings. While an ALJ is not required to summarize the entire record in his or her decision to support his or her findings, *see Dyer v. Barnhart*, 395 F.3d 1206, 1210–11 (11th Cir. 2005), a physician's opinion regarding Plaintiff's limitations cannot de discredited by simply citing to partial references to the physician's notes, which taken in isolation and out of context, contradict the overall opinion of the same physician. *See Fleming v. Comm'r of Soc. Sec. Admin.*, 550 F. App'x. 738, 740 (11th Cir. 2013) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987)).

Here the opinions or Dr. Bender and Dr. Capone regarding the limiting nature of Plaintiff's pain are supported by their medical notes stating the persistence and level of pain, the type of medication required to manage pain, and the need for treatments other than pain management. While the Court is not making a determination regarding whether Plaintiff's physician opinions should be entitled to great weight, the evidence discussed by the ALJ, in this case, failed to lay out a "good cause" to support her decision to reject the opinion of Plaintiff's treating physicians. Therefore, it is recommended that the Court reverse and remand this case.

## IV.

Accordingly, after due consideration and for the foregoing reasons, it is hereby

RECOMMENDED:

1. The decision of the Commissioner be REVERSE and REMAND.

2. The Clerk be directed to enter final judgment in favor of the PLAINTIFF and close the case.

IT IS SO REPORTED in Tampa, Florida, on this 27th day of February, 2018.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

**<u>NOTICE TO PARTIES</u>**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.


cc:  Hon. James D. Whittemore.
     Counsel of Record